## C. BREWER & CO. *vs.* THE BARK ALSTER.

### IN ADMIRALTY. BEFORE HARRIS C.J.

### MAY, 1879.

Damage to cargo, by rust, held to be a peril of the sea, and not due to bad stowage.

### DECISION OF HARRIS, J.

The libel in this cause sets forth that certain railroad iron was taken on board of bark Alster at Liverpool, and by reason of the bad stowage was so damaged on the voyage hither as to cause a loss to the shippers by reducing its value (say) $5,000; and the libel expressly avers that such loss was not caused by dangers of the sea.

The answer is a simple one, setting up no new matter, but denying any liability, and directing attention to the clause in the Bill of Lading that the shipper is not liable for leakage, breakage, loss or damage by heat, sweat, rust or decay, unless occasioned by improper stowage.

The damage complained of is a very great rusting of the iron, by which, it is testified, that the value of the iron is depreciated 25 per cent. on the original value; and an attempt is made to show, by testimony, that this depreciation or rusting is occasioned by improper stowage of the ship. The iron is of the T pattern, and was stowed in such a manner as to dove-tail the iron together, boards being put as dunnage between every alternate layer; the effect of which was, as it is said, to make the iron present a solid face on each one of the tiers; whereas, it is said

that the proper way of stowing railroad iron is to place it diagonally so as to make diamond shape intervals, or, as the witnesses say, "to diamond it," the effect of which would be, as it is testified, to let the water through more freely, if there should be leakage from above; and to bring the weight higher up in the ship, so that, as it is contended, the ship would labor less in a sea way.

The whole testimony goes to show that the bark in question was loaded with very heavy material (dead weight) iron, bricks, coal, cement, machinery, etc.; that she leaked on the voyage out, from her deck and from her sides. The testimony is strong to the effect that she was staunch and well found when she put to sea and the leakage was caused by the laboring of the ship; and indeed, this is the theory of the libellants themselves, since their whole effort is directed to proving that if the iron had been differently stowed in the ship, she would not have labored so much, and consequently would not have leaked so much. Some testify that the iron should have been more distributed about the ship; and others, that it should have been piled in the diamond shape; and they say, that by these means, there would not have been so much danger of the ship leaking, since the dead weight by the first mode would be more distributed.

I have examined the whole matter carefully, and it is not apparent to me that such would have been the case, since bricks are as much dead weight as iron, and iron machinery is equally dead weight as railroad iron; and indeed, the entire cargo of the ship was made up of weighty articles of this description, so that, it does not seem to me that any change in the distribution of the cargo would have had any effect whatsoever in the leaking of the ship.

Again, regarding its being stowed in diamond shape, it is in testimony here, that the ship was a very crank one, and the general testimony is that in loading a ship reference must be had to her qualities, and this ship being a crank ship, the weight of her loading must be brought down as low as possible. The testimony of Captains Pierce and Smith, who went aboard to sur-

vey the vessel and the cargo, is to the effect that but a very small quantity of water came in from the decks, but a more considerable quantity from the sides; and it therefore appears, that the straining of the ship caused the leakage, which caused the damage. The mate of the ship says, that three or four days out from the Mersey they found themselves on a lee shore at Small's Rock; and that they were obliged to carry all the sail that they could pack on the ship to avoid imminent disaster; and that he found soon, that the ship was making more water than she ought to make, but still not enough to be at all alarming, or make it very difficult to keep the ship free; he farther testifies, that the leakage was mainly between the main and mizzen masts, and in tracing the whole matter back, to the best of his judgment, the leaks occurred from the press of sail they were compelled to carry in weathering Small's Rock and from the laboring of the ship some days afterward. The leaks as they are described, not only by the mate himself, but by Captains Pierce and Smith, indicate most clearly that the leakage was caused in the way which the mate indicates.

Now to say that this action of the ship was caused by bad stowage, or that any other mode of stowage would have prevented it, is to say more than is possible within human knowledge.

The allegation is that it was bad stowage that caused this damage; now the proof should be, not that it caused it in a secondary remote and speculative way, but in a direct mode, for it would be impossible to stow a ship in such a way as to prevent one from supposing, and saying in case of accident, that if she had been stowed in some other way, the same result might not have occurred; perhaps if the bricks had been in that part of the ship where the iron was, and the iron where the bricks were, nothing would have been damaged; but that does not show that it was injudicious or unskillful work to stow the bricks as they were and the iron as it was. This ship was stowed in a port whence they are accustomed to carry railroad iron as cargo, by stevedores skillful in the work. The iron

was stowed in the way it was, for the purpose of availing themselves more thoroughly of the carrying capacity of the ship, and I cannot see that a want of judgment in the mode of stowage led, directly or even indirectly, to the damage alleged; but on the contrary, it seems to me to be clearly proved that the ship was staunch and well found at the commencement of her voyage; and that the damage done is the result of the dangers of the sea.

The libel is therefore dismissed, each party paying their own costs.

*A. S. Hartwell,* for libellants.
*Castle & Hatch,* for respondents.
Honolulu, May 13th, 1879.